**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MANUFACTURERS AND TRADERS TRUST CO., | CIVIL ACTION |
| Plaintiff, | No. 10-7342 |
| v. | |
| CHALPIN DENTAL ASSOCIATES, P.C., and JOHN W. CHALPIN, | |
| Defendants/Third-Party Plaintiffs, | |
| v. | |
| CIEOS, INC., and EKRAMUL KHAN, | |
| Third-Party Defendants. | |

March 26, 2012

## <u>MEMORANDUM</u>

Two motions are currently before the court in this matter.  First, the plaintiff,

Manufacturers and Traders Trust Co. ("M&T Bank"), has moved for summary judgment

on its claim against the defendants/third-party plaintiffs, Chalpin Dental Associates, P.C.

and John W. Chalpin (collectively, "Chalpin").  Second, Chalpin has moved for entry of

default judgment against the third-party defendants, Cieos, Inc. and Ekramul Khan.  Khan

has filed an opposition to the motion for default judgment. For the reasons that follow, both M&T Bank's motion for summary judgment and Chalpin's motion for default judgment will be denied.

## I. Procedural Background

This action was commenced in September 2010 by M&T Bank in Pennsylvania state court. According to M&T Bank's complaint, Chalpin operates a dentistry business in New Hampshire; in the course of that business, Chalpin entered into a financing agreement (called a "lease" by M&T Bank) to purchase equipment from Cieos; M&T Bank, through a chain of assignment and succession-in-interest, is now the payee on the financing agreement; Chalpin has defaulted under the terms of the financing agreement by failing to make any monthly payments since April 2009; and, in the event of default, M&T Bank is entitled to recover the unpaid balance of the financing agreement. M&T Bank seeks to recover $78,339.18, plus interest, costs, and attorneys' fees.

On October 22, 2010, Chalpin removed the suit to the U.S. District Court for the Middle District of Pennsylvania on the basis of diversity jurisdiction. 28 U.S.C. §§ 1441, 1332(a).[1] Chalpin then sought a change of venue. According to the memorandum filed in support of this request, the financing agreement that forms the basis for M&T Bank's claim contains a clause requiring the parties to consent to the personal

---

[1] According to the notice of removal, both defendants are citizens of New Hampshire and M&T Bank is a citizen of New York.

jurisdiction of the federal and state courts of Pennsylvania, but the agreement does not specify any particular forum within Pennsylvania. The only entity in the case with any alleged ties to Pennsylvania—Court Square Leasing Corporation, a predecessor in interest to M&T Bank—was located in the Eastern District of Pennsylvania. On December 2, 2010, Chalpin's motion for a change of venue was granted, and the case was transferred to this court.

Chalpin filed an answer and counterclaims against M&T Bank on December 29, 2010 (Docket No. 4). On January 18, 2011, Chalpin filed a third-party complaint against Cieos (Docket No. 8). The third-party complaint alleges that Cieos had breached a contract with Chalpin to provide software and training with respect to the equipment at issue in M&T Bank's claim—a failure which, in turn, had frustrated the purpose of the financing agreement. (Cieos is the company listed in the financing agreement as providing the dental equipment to Chalpin.) On April 13, 2011, after Cieos failed to file a responsive pleading, Chalpin applied for entry of default and default judgment on the third-party complaint (Docket No. 15). However, on May 10, 2011, I struck the third-party complaint and dismissed the request for default judgment as moot, on the ground that Chalpin had failed to seek leave of the court to file a third-party complaint more than fourteen days after filing an answer (Docket Nos. 16, 17). Fed. R. Civ. P. 14(a)(1).

The following day, May 11, 2011, M&T Bank moved for summary judgment on its claim against Chalpin (Docket No. 18). After an extension of time, Chalpin opposed

summary judgment on June 20, 2011 (Docket No. 25).

In the interim, Chalpin also moved for leave to re-file the third-party complaint against Cieos (Docket No. 19). I granted leave on May 24, 2011, and deemed the third-party complaint filed as of that date (Docket Nos. 20, 21). On July 21, 2011, Chalpin moved for leave to file an amended third-party complaint to name an additional third-party defendant, Ekramul Khan, and to plead a claim for fraud against both Khan and Cieos (Docket No. 27). According to the amended third-party complaint, Khan is an officer of Cieos. I granted leave to amend the third-party complaint on September 20, 2011, and the amended third-party complaint was filed on that date (Docket Nos. 32, 33).

On November 5, 2011, Chalpin requested that the Clerk of the Court enter default against Cieos and Khan for failing to file any responsive pleading to the amended third-party complaint (Docket No. 37). Default was entered on November 7, 2011. Chalpin then moved for entry of default judgment against both third-party defendants, on November 8, 2011 (Docket No. 38). Khan submitted an opposition to default judgment on November 15, 2011 (Docket No. 39).[2]

## II. Jurisdiction

The court has subject-matter jurisdiction over M&T Bank's suit against Chalpin, and Chalpin's counterclaims against M&T Bank, because the parties are citizens of

---

[2]Chalpin's motion for entry of default judgment included a certification to the effect that M&T Bank did not contest the entry of default judgment, but M&T Bank subsequently also filed an opposition to the entry of default judgment (Docket No. 40).

different states and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).

The court has subject-matter jurisdiction over Chalpin's third-party claims against Cieos

and Khan because the third-party claims form part of the same case or controversy and

thus fall within the court's supplemental jurisdiction.  *Id.* § 1367.

## III. Discussion

**A.    Summary Judgment**

M&T Bank seeks summary judgment against Chalpin on the lone count of the

complaint, alleging a breach of the financing agreement, in the amount of $94,007.02—a

figure representing $78,339.18 in unpaid monthly payments and interest plus $15,667.84

in attorneys' fees, both allegedly due under the terms of the financing agreement.

**1.    Standard for Granting Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(a) (formerly Rule 56(c)).  A genuine dispute as to a material

fact exists only if there is evidence in the summary judgment record "such that a

reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The inquiry is whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law."  *Somner v. The Vanguard Grp.*, 461 F.3d 397,

403-04 (3d Cir. 2006) (internal quotation marks omitted).  "The evidence of the non-

movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the moving party would bear the burden of proof at trial, the non-moving party may defeat summary judgment by "produc[ing] or point[ing] to evidence in the record that creates a genuine issue of material fact." *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir.2007). "Put another way, it is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *Id.* (footnote omitted).

## 2.     Summary Judgment Record

In its motion for summary judgment, M&T Bank relies entirely on the pleadings and three documents attached as exhibits.

Two of the documents speak to the chain of assignment and succession-in-interest by which M&T Bank has come to acquire the rights it now seeks to enforce: (1) an undated document entitled "Assignment of Finance Agreement Without Recourse" and

(2) an untitled document dated September 8, 2009, executed on M&T Bank letterhead. According to the first, the business with whom Chalpin initially entered into the financing agreement—Spenser Capital Group, Inc. d/b/a Group Financial Services—transferred its interest in the agreement to "Court Square Leasing." According to the second, M&T Bank is a successor in interest, via a merger, to "Court Square Leasing Corporation."

The third and final document attached to M&T Bank's motion for summary judgment, other than the pleadings, is the financing agreement itself. The financing agreement was executed by Chalpin Dental Associates, P.C. as borrower on September 17, 2008, and Spenser Capital Group, Inc. d/b/a Group Financial Services as lender on October 15, 2008. John W. Chalpin also executed the financing agreement as a guarantor. The financing agreement calls for Chalpin to make three monthly payments of $50 and fifty-seven monthly payments of $1,367.25, for a total obligation of $78,083.25. In turn, Group Financial Services agreed to finance the purchase of $59,567 in dental equipment, training, and services from Cieos, as detailed in a "Schedule A" attached to the financing agreement. Chalpin's signature appears on Schedule A, without an accompanying date, under a line marked "Authorization for Payment." Schedule A itself is dated September 16, 2008.

The first paragraph of the financing agreement states in part:

FOR VALUE RECIEVED, the Borrower [Chalpin] hereby unconditionally promises to pay to the order of the Lender . . . the "Total Finance Amount" [of $78,083.25] described above from the date of this Agreement until paid in full . . . . Such Total Finance Amount may hereafter be referred to as the

"Indebtedness." The Indebtedness hereunder shall be repaid in consecutive monthly payments in the amounts stated above for the term stated above commencing on the date this Agreement is signed by Lender or such later date designated by lender. The obligation of Borrower to pay the Indebtedness is absolute and unconditional and is not subject to cancellation, reduction, setoff or couterclaims. . . . Upon the occurrence of an event of default (as hereinafter defined) and at any time thereafter, Lender, at Lender's option, may declare all sums of principal and interest outstanding hereunder to be immediately due and payable together with reasonable attorney's fees and legal and other expenses . . . .

One of the defined "default" events, referenced in the above-quoted first paragraph, is that the "Borrower shall fail to pay when due the Indebtedness or other obligations under this Agreement, and such failure shall continue for a period of five (5) days." Financing Agreement ¶ 6(a).

M&T Bank has submitted no evidence to support its claim that Chalpin "failed to make any payments under the [financing agreement] since April 17, 2009." Pl.'s S.J. Mot. ¶ 9. Instead, M&T Bank relies entirely on the pleadings. M&T Bank's complaint alleged that Chalpin did not make the payment "due April 17, 2009 and all payments thereafter." Pl.'s Compl. ¶ 12. Chalpin's answer stated that "[t]he allegations that payments were 'due' . . . are denied as conclusions of law to which no responses are required." Def.'s Ans. ¶ 12. M&T Bank characterizes this answer as failing to deny the allegation of non-payment, such that there is no genuine issue of material fact as to whether there was a default under the terms of the financing agreement.

Chalpin's position is that a genuine issue of material fact persists as to whether Chalpin breached his obligations under the financing agreement and whether, even if a

breach did occur, equitable estoppel or a failure to mitigate might prevent M&T Bank from recovering its claimed damages. In support of both arguments, Chalpin submits two exhibits. The first is an email from John Chalpin to "Ekram" at Cieos, dated February 5, 2009. According to the email, construed in the light most favorable to Chalpin, Chalpin received a call from a representative of Group Financial Services on September 29, 2009 (shortly after Chalpin executed the financing agreement); the representative wished to know, for purposes of releasing funds to Cieos, whether the equipment Cieos was to provide to Chalpin was installed and functioning properly; Chalpin stated that the equipment was not installed and functioning properly; and Chalpin refused to verbally authorize the release of funds to Cieos.

The second exhibit is a collection of records from Court Square Leasing, entitled "Customer Lease History; Comment—Payment Information." The records consist of a series of "Collection Notes" organized by date. Some entries in the "Collection Notes" appear to be internal communications among Court Square Leasing employees.

The internal communications confirm that, as of early February 2009, Chalpin had instructed Group Financial Services not to release funds to Cieos because the equipment from Cieos was not installed and functioning, despite being delivered by Cieos in October 2008. (At the time, Cieos was scheduled to come to Chalpin's office on February 20, 2009, presumably to install the equipment.) According to entries on February 4, 10, and 13 of 2009, Group Financial Services had completed a "verbal checklist" indicating that

Chalpin approved payment to Cieos.  However, although Chalpin had signed a form indicating delivery and acceptance of the equipment, he had specifically advised Group Financial Services over the phone that the equipment was not functioning and that funds should not be released to Cieos.  Chalpin was told by Group Financial Services "that he would not pay a cent until the equipment was up and running."  Def.'s Opp., Ex. B, at P54 (Docket No. 25-3, at 6).

### 3.      Substantive Law

Chalpin argues that M&T Bank's claim sounds in contract and is governed by the law of Pennsylvania, and I agree on both points.   As to the former, a promissory note is a form of contract.  *Gitt v. Myers*, 417 A.2d 664, 666 (Pa. Super. Ct. 1980).  As to the latter, the financing agreement contains a valid choice-of-law clause specifying that the financing agreement "shall be governed in all respects . . . by the laws of the Commonwealth of Pennsylvania."  Financing Agreement ¶ 9(e) (capitalization removed).  *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497 (1941) (federal court sitting in diversity must apply choice-of-law principles of the forum state); *Kruzits v. Okuma Mach. Tools, Inc.*, 40 F.3d 52, 56 (3d Cir. 1994) (Pennsylvania court would honor a choice-of-law provision unless it "conflicts with strong public policy interests").

Under Pennsylvania law, "[t]o successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant

damages." *Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. Ct. 2005).  Chalpin concedes that the financing agreement was a binding contract, leaving only the second and third elements in dispute.

Whether the contract has been breached depends on what the contract requires of each party, which is itself a question of interpretation.  "The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties." *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468 (Pa. 2006).  "[T]he intent of the parties to a written contract is to be regarded as being embodied in the writing itself . . . . [W]hen the language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as manifestly expressed, rather than as, perhaps, silently intended." *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982) (emphasis omitted). "When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances." *Ins. Adjustment Bureau, Inc.*, 905 A.2d at 468; *see also Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436-37 (Pa. 2004) (describing parol evidence rule).

Chalpin invokes the affirmative defenses of both equitable estoppel and failure to mitigate.  "[U]nder the estoppel concept, a contract may be modified if either words or actions of one party to the contract induce another party to the contract to act in derogation of that contract, and the other justifiably relies upon the words or deeds of the

first party." *Kreutzer v. Monterey Cnty. Herald Co.*, 747 A.2d 358, 362 (Pa. 2000). "The two essential elements of equitable estoppel are inducement and justifiable reliance on that inducement." *Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502, 503 (Pa. 1983). The party asserting equitable estoppel as an affirmative defense bears the burden of establishing these elements "by clear, precise and unequivocal evidence." *Id.* at 504. As to failure to mitigate, "a party who suffers a loss due to a breach of contract has a duty to make a reasonable effort to mitigate his losses." *Bafile v. Borough of Muncy*, 588 A.2d 462, 464 (Pa. 1991). "The burden is on the breaching party to show that the losses could have been avoided." *Delliponti v. DeAngelis*, 681 A.2d 1261, 1265 (Pa. 1996).

### 4. Application

M&T Bank has failed to show that it is entitled to summary judgment; a reasonable juror would not necessarily be compelled to find in its favor. Viewed in the light most favorable to Chalpin as the non-moving party, the summary judgment record indicates that the equipment delivered by Cieos was not properly installed or functioning in Chalpin's offices, and that Chalpin was told by Group Financial Services (Chalpin's counterparty on the contract) that Chalpin's obligations under the financing agreement were not due until the Cieos-delivered equipment was operational—*i.e.*, that Chalpin "would not pay a cent until the equipment was up and running." The record further indicates that funds were released to Cieos prior to the equipment becoming functional because Group Financial Services's "verbal checklist" incorrectly stated that Chalpin

authorized the release of payment. The internal communications of Court Square Leasing

(M&T Bank's predecessor in interest) in February 2009 appear to acknowledge that Cieos

should not have been paid until the equipment was functioning. At the very least, Chalpin

has pointed to materials in the record that demonstrate genuine issues of material fact as

to the circumstances of the release of payments to Cieos.

It is true that the financing agreement does not contain express language that

would make Chalpin's payment obligations dependent upon the proper installation and

functioning of the equipment delivered by Cieos. The financing agreement describes

Chalpin's repayment obligation as "unconditional." Financing Agreement ¶ 1.[3]

Nevertheless, Chalpin has produced evidence that creates a genuine issue of material fact

as to whether the parties intended that funds not be released to Cieos (and Chalpin not

begin repayment of those funds to Group Financial Services) until the equipment was

installed and functioning. Based on the email and records attached to Chalpin's

opposition, it appears to have been the understanding of both Chalpin, Group Financial

---

[3]The financing agreement also contains a clause stating that "[t]his Agreement, including the Exhibits hereto, all of which are hereby incorporated herein by reference, and all documents executed and delivered pursuant hereto, constitute the entire agreement between the parties, and may be amended only by a writing signed on behalf of each party." Financing Agreement ¶ 9(f). Under Pennsylvania law, this language might be persuasive evidence that the parties did not intend to include any conditions in the financing agreement concerning Cieos's installation of the equipment. *Cf. Yocca*, 854 A.2d at 436 (discussing integration clauses). But M&T Bank does not cite this provision or develop any argument based on it, and it is unclear from the record what other documents, if any, were "executed and delivered pursuant" to the agreement.

Services, and Court Square Leasing that such a procedure would be followed. The parol evidence rule does not preclude consideration of these materials in ascertaining the intent of the parties, because M&T Bank has not demonstrated that the financing agreement unambiguously addresses this scenario (*i.e.*, the possibility that Cieos would fail to install the equipment).

Alternatively, Chalpin has also adduced sufficient evidence to create a genuine issue of material fact as to whether Group Financial Services's conduct—in leading Chalpin to believe that he would not have to pay until the equipment was functional—might merit the application of principles of equitable estoppel. There are triable issues concerning whether Chalpin was induced by Group Financial Services to delay his payments until the equipment was functional and whether he was justified in relying on that inducement, such that Pennsylvania law would recognize equitable estoppel as an affirmative defense.[4]

Accordingly, in the order that follows, M&T Bank's motion for summary judgment will be denied.

---

[4]Given the disposition below of Chalpin's motion for default judgment, discovery in this matter is likely to continue. My denial of M&T Bank's motion for summary judgment will be without prejudice to the renewal of that motion at the conclusion of all discovery. If such a renewed motion is forthcoming from the plaintiff, or if any other party moves for summary judgment, the parties will be directed to submit a joint statement of undisputed material fact. There appears to be little, if any, reason why at this stage of the litigation M&T Bank and Chalpin are unable to agree on simple issues of historical fact, such as whether Chalpin made any payments on or after April 2009 (as opposed to the separate question of whether any such payments were "due").

**B.     Default Judgment**

I now turn to the third-party action: Chalpin asks that the Clerk of the Court enter default judgment in the amount of $59,567 against Cieos, and that this court enter default judgment for other damages against both Cieos and Khan, in an amount to be determined after a hearing pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.

**1.     Background**

As summarized at the outset of this memorandum, Chalpin filed the amended third-party complaint—for which he now seeks default judgment—on September 20, 2011 (Docket No. 33).  According to the amended third-party complaint, Cieos is a New Jersey corporation that holds itself out on its website as "a technology solutions company servicing dental offices."  Am. 3d-Party Compl. ¶ 5.[5]  Khan is alleged to be the chief executive officer of Cieos and the owner of half of its stock during the events in question.

Chalpin alleges that Khan and Cieos agreed to provide certain items of dental equipment, training in the use of that equipment, and computer software for use with the equipment.  The agreement was contained both in an invoice from Cieos to Chalpin, dated September 16, 2008, and in a "Technology Integration proposal" provided by Cieos

---

[5]The factual allegations of a complaint may be taken as true against a defaulting party for purposes of considering the entry of default judgment.  10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2688, at 58-59 (3d ed. 1998) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

and Khan to Chalpin on the preceding day.[6]  Chalpin further alleges that Khan and Cieos did not provide the promised training, and the promised software was provided but did not function properly.  Cieos and Khan also allegedly failed to deliver some of the promised equipment.  According to the pleading, "[a]s a result of the refusal of Cieos and Mr. Khan to deliver the items and services promised . . . [Chalpin] could not put any of the Cieos hardware or software to profitable use."  Am. 3d-Party Compl. ¶ 36.

The amended third-party complaint does not contain separately enumerated counts or causes of action.  But the pleading appears to rely on least two theories.  First, Chalpin alleges a breach of contract as between Chalpin and Cieos, a breach that is said to have been "caused" by Khan's deliberate refusal to provide the equipment, training, and software catalogued above.  Am. 3d-Party Compl. ¶ 40.  Second, Chalpin alleges that Cieos and Khan "frustrated the purpose of the [financing] agreement" between Chalpin and M&T Bank's predecessor in interest by refusing to provide the promised items and services, and that this conduct violated the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2.  Am. 3d-Party Compl. ¶¶ 38-39.

After both Khan and Cieos failed to file any responsive pleading or otherwise

---

[6]The September 16, 2008, invoice was attached as "Schedule A" to the financing agreement.  It lists the following items, services, and prices: one RAID Level 5 Server, for $8,750; three Cleoport Clinical Workstations, for $9,360; two Administrative Workstations, for $3,200; Network Equipment/Software/Installation Services, for $9,105; one Cieos Software Suite, for $25,000; and Accessory Items, for $4,152.  The total balance listed on the invoice is $59,567.

impose a defense, the Clerk of the Court granted Chalpin a default against both third-party defendants on November 7, 2011. Chalpin then moved on November 8, 2011, for an entry of default judgment against both third-party defendants (Docket No. 38). The motion for default judgment asserted that both Cieos and Khan had been properly served with the amended third-party complaint on October 6, 2011.[7] The motion also presented, in attached exhibits, email correspondence from late October between Chalpin's counsel and Khan. According to the emails, Khan had actual notice of the third-party claim against him at least by October 25, 2011, and he proposed settlement discussions on that date; counsel for Chalpin responded on October 26 that, if Khan were inclined to make a settlement offer, counsel would discuss the matter with his clients.

Chalpin's motion for default judgment requested that judgment be entered by the Clerk of the Court in the amount of $59,567, explained in an accompanying affidavit as the entire value of the items and services Cieos had promised to deliver to Chalpin. *See* Fed. R. Civ. P. 55(b)(1) (Clerk may enter default judgment "for a sum certain or a sum that can be made certain by computation . . . on the plaintiff's request, with an affidavit showing the amount due"). The motion for default judgment also requested that this court enter default judgment as to the other damages sought in the amended third-party

---

[7]Two affidavits were filed in the action by a process server on October 20, 2011 (Docket No. 35, 36). The process server claims to have personally served Khan with the amended third-party complaint at an address in Texas on September 30, 2011. The process server also claims to have served Cieos on the same date and at the same address, by serving process on Khan in his capacity as an officer of Cieos.

complaint—such as consequential and incidental damages—in an amount to be determined at a hearing.

On November 15, 2011—exactly one week after Chalpin's motion for default judgment—Khan submitted a "Response of Third-Party Defendant Ekramul Khan to Third-Party Plaintiffs' Motion for Default Judgment" (Docket No. 39). In pertinent part, the response acknowledged that Khan had once been an officer of Cieos but denied that he was an officer "at any pertinent time"; the response also acknowledged that Khan had been personally served with the amended third-party complaint. Khan Resp. ¶¶ 13, 15. In an accompanying verified statement, Khan elaborated that he left Cieos shortly after taking part in the transaction with Chalpin and was now involved with an "imaging software business" of a similar name ("Cieos Imaging and Data Systems, Inc.") in Texas. Khan Statement ¶¶ 1-2.

Khan's response also contained further information concerning the settlement discussions alluded to in the emails attached to Chalpin's motion for default judgment. According to Khan, Khan responded to the October 26, 2011, overture from Chalpin's counsel to make a settlement offer by making such an offer, which Chalpin's counsel indicated that he would take to his client. The response further claims that Khan did not respond to the amended third-party complaint because he "assumed that the matter [of settlement] was under discussion and the litigation was on hold." Khan Resp. ¶ 24. Both Khan's response and his verified statement deny the pertinent factual allegations of the

amended third-party complaint.

## 2. Standard for Default Judgment

The entry of default judgment is governed by Rule 55(b) of the Federal Rules of

Civil Procedure. Under Rule 55(b), the party seeking an entry of default judgment by the

court must first obtain a default, entered by the Clerk of the Court pursuant to Rule 55(a)

and available only against a party who has "failed to plead or otherwise defend." *See*

*generally Byrd v. Keene Corp.*, 104 F.R.D. 10, 11-12 (E.D. Pa. 1984) (explaining

strictures of Rule 55). Following default,

> Rule 55(b)(1) allows the Clerk of the Court to enter a default judgment
> when three requirements are met: (1) the amount requested for judgment
> must be a "sum certain" or a "sum which can by computation be made
> certain;" (2) the defendant must be in default for failure to appear; and (3)
> the defendant must be neither an infant nor an incompetent person. If any of
> these requirements is not met, the default judgment can only be entered by
> the court under subsection (2).

*Id*. Rule 55 is applicable to requests for default or default judgment by a third-party

plaintiff against a third-party defendant. *See* Fed. R. Civ. P. 55 Advisory Committee Note

to 2007 Amendments ("Rule 55(a) applies Rule 55 to any party against whom a judgment

for affirmative relief is requested."). Although Chalpin's motion for default judgment is

addressed both to the Clerk of the Court under Rule 55(b)(1) and to this court under Rule

55(b)(2), I will dispose of both requests.

An entry of default under Rule 55(a) "does not entitle a claimant to default

judgment as a matter of right." *Gusler v. Commercial Spray Litig.*, Civ. No. 11-2039,

2012 WL 21442, at *2 (M.D. Pa. Jan. 23, 2012). Instead, the decision of whether to enter

default judgment ultimately rests with the sound discretion of the district court,

*Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000), and both default and

default judgment are generally discouraged in favor of a resolution on the merits, *United

States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir. 1984).

Rule 55(c) permits the court to "set aside an entry of default for good cause." The

decision whether to set aside a default also rests in the district court's discretion. In

exercising that discretion, the court must consider "(1) whether the plaintiff will be

prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the

default was the result of the defendant's culpable conduct." *$55,518.05 in U.S. Currency*,

728 F.2d at 195; *see also Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d

Cir. 1984) (listing additional factors, such as extent of party's personal responsibility for

dilatory conduct).

### 3.    Application

Khan has submitted only a response to Chalpin's motion for default judgment and

not a formal request under Rule 55(c) to set aside Khan's default. But both the proposed

order and the memorandum attached to the response request that Khan be permitted to

impose a defense. Accordingly, I will construe the response both as an opposition to the

entry of default judgment and as a request to set aside the default. *See, e.g., Meehan v.

Snow*, 652 F.2d 274, 276 (2d Cir. 1981) ("Even if a default had been entered, opposition

to a motion for a default judgment can be treated as a motion to set aside the entry of a default despite the absence of a formal Rule 55(c) motion.").

All three factors emphasized by the Third Circuit in this context favor setting aside the default. *See $55,518.05 in U.S. Currency*, 728 F.2d at 195. First, it does not appear that the third-party plaintiff, Chalpin, will suffer any unfair prejudice if Khan's default is set aside. The amended third-party complaint was allegedly served on Khan in October 2011, and he first entered an appearance to oppose the entry of default judgment in November 2011. The prejudice flowing from such a short delay appears to be *de minimis*.

Second, the third-party defendant, Khan, purports to have a meritorious defense. In his verified statement, Khan denies that he breached his agreement to provide software or hardware to Chalpin, and he claims that he ceased to provide training to Chalpin at Chalpin's request, after a payment dispute; he also claims not to have acted fraudulently or with an improper purpose. If true, those assertions would seem to be a substantial factual defense to Chalpin's claims for consumer fraud and breach of contract.

Third, the third-party defendant does not appear to have been culpable in causing the default. As far as the limited record presently before the court reveals, the default was caused by Khan's mistaken but not unreasonable belief that the pendency of settlement negotiations relieved him of the need to respond to the amended third-party complaint.

Taken together and coupled with the generally disfavored status of default and default judgment, these factors weigh in favor of setting aside Khan's default. In the

order that follows, I will deny Chalpin's motion for default judgment as to Khan; I will set aside Khan's default for good cause pursuant to Rule 55(c); and I will permit Khan to file a responsive pleading within twenty-one days of the date of the order.

That leaves the pending motion for default judgment against third-party defendant Cieos. The response filed by Khan does not purport to be filed on behalf of Cieos, and, in the response, Khan specifically denies that he is now an officer of Cieos. The docket does not evince the filing of any responsive pleading by Cieos at any time (either to the initial third-party complaint or to the amended third-party complaint), nor has an attorney ever entered an appearance on Cieos's behalf.

Entering default judgment against the defaulting third-party defendant, Cieos, while permitting the third-party action to proceed to a resolution on the merits with respect to the other third-party defendant, Khan, raises the specter of inconsistent or incongruous outcomes. "As a general rule . . . when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted." 10A Wright, Miller & Kane, *supra*, § 2690, at 73 (discussing *Frow v. De La Vega*, 15 Wall. (82 U.S.) 552 (1872)). Whether Khan and Cieos might be jointly liable is unclear.[8] It might ultimately be that judgments against Cieos and in favor of Khan would

_____

[8]The amended third-party complaint alleges in part that Khan "maintained Cieos as a corporate shell in a scheme to breach Cieos' agreements with Chalpin Dental and other dental practices while shielding himself and other shareholders from liability arising out

22

not be incongruous on the facts or the law. *See Farzetta v. Turner & Newall, Ltd.*, 797 F.2d 151, 154 (3d Cir. 1986) (interpreting *Frow* to preclude only logically inconsistent default judgments). But the prudent course at this juncture is to deny Chalpin's motion for default judgment as to Cieos, without prejudice to the renewal of that motion at a later stage of the litigation. Cieos remains in default.

## IV. Conclusion

For the foregoing reasons, M&T Bank's motion for summary judgment against Chalpin will be denied, and Chalpin's motion for default judgment against Cieos and Khan will also be denied.

---

of these breaches." Am. 3d-Party Compl. ¶ 43. Piercing the veil of limited corporate liability to hold a shareholder liable for the corporation's conduct is sometimes said to create a form of joint liability. *See, e.g.*, *IFC Interconsult, AG v. Safeguard In'l Partners, LLC*, 438 F.3d 298, 312 (3d Cir. 2006) ("Veil-piercing does not make a party secondarily liable. Rather, it collapses corporate distinctions to make for joint primary liability."); *Casini v. Graustein* (*In re Casini*), 307 B.R. 800, 811 (Bankr. D.N.J. 2004) ("Veil piercing is an equitable remedy whereby the court disregards the corporate existence and holds the individual principals liable for the corporation's debts. Consequently, the individual and the corporation are treated as one for liability purposes." (internal citations omitted) (applying New Jersey law)).